**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ALLIE CHARLES BESSETTE,

      Petitioner,

v.                                                                    Case No. 8:12-cv-1707-T-36MAP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.
_____/

## <u>ORDER</u>

Petitioner Allie Charles Bessette, an inmate in the Florida Department of Corrections proceeding *pro se*, initiated this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1).  He challenges his convictions entered in the Thirteenth Judicial Circuit, Hillsborough County, Florida, in 2006.  Respondent filed a response (Dkt. 16), and Bessette filed a reply (Dkt. 25).  Bessette also filed a supplement to his reply (Dkt. 26) and a notice of supplemental authority (Dkt. 28).  Upon review, the petition must be denied.

### Procedural History

Bessette was charged with eight counts; a co-defendant, Joe Johnson, was also charged on counts one through five.  Bessette proceeded to a jury trial.  Counts seven and eight involved one incident, while counts one through six involved a second incident that occurred a short time later.  On count seven, Bessette was convicted of attempted armed burglary of a dwelling and sentenced to thirty years in prison.  (Dkt. 20, Ex. 1, Vol. I, p. 170; Vol. II, pp. 235-36.)  He was convicted of aggravated assault on count eight and received

a sentence of fifteen years in prison. (Dkt. 20, Ex. 1, Vol. I, p. 170; Vol. II, pp. 238-39.) On count one, Bessette was convicted of aggravated assault and sentenced to fifteen years in prison. (Dkt. 20, Ex. 1, Vol. I, p. 168; Vol. II, pp. 221-22.) On count two, he was convicted of home invasion robbery with a firearm and sentenced to life in prison. (Dkt. 20, Ex. 1, Vol. I, p. 168; Vol. II, pp. 224-25.) On count three, Bessette was convicted of assault on a law enforcement officer, for which he received a sentence of 364 days. (Dkt. 20, Ex. 1, Vol. I, p. 169; Vol. II, p. 227.) With regard to counts four and five, Bessette was convicted of false imprisonment and sentenced to five years in prison. (Dkt. 20, Ex. 1, Vol. I, p. 169; Vol. II, p. 229.) On count six, he was convicted of aggravated battery and sentenced to forty years in prison. (Dkt. 20, Ex. 1, Vol. I, p. 170; Vol. II, p.232-33.) Bessette was sentenced as a violent career criminal on counts one, two, six, seven, and eight.

The state appellate court affirmed Bessette's convictions and sentences with a written opinion. *Bessette v. State*, 975 So.2d 478 (Fla. 2d DCA 2007). (Dkt. 19, Ex. 4.) His motion for rehearing and rehearing en banc was denied. (Dkt. 19, Exs. 5, 6.) Bessette filed a state habeas petition, asserting ineffective assistance of appellate counsel. (Dkt. 19, Ex. 8.) The state appellate court denied the petition without comment. (Dkt. 19, Ex. 9.) Bessette filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Dkt. 20, Ex. 14, Vol. I, pp. 21-98.) The state postconviction court entered an order denying or reserving ruling on several claims and directing the State to respond to the remaining claims. (Dkt. 20, Ex. 14, Vol. II, pp. 110-269.) After the State responded, the postconviction court entered a second order denying or reserving ruling on a number of claims and granting an evidentiary hearing on the remaining claims. (Dkt. 20, Ex. 14, Vol. IV, pp. 407-607.) Following the evidentiary hearing, the state court entered an order

rejecting Bessette's remaining claims.  (Dkt. 20, Ex. 14, Vol. VIII, pp. 1288-1402.) The state appellate court *per curiam* affirmed the postconviction court's orders.  (Dkt. 19, Ex. 18.) Bessette's motion for rehearing was denied, and his motion for rehearing en banc was stricken.  (Dkt. 19, Exs. 19-21.)  Respondent does not contest the timeliness of Bessette's federal habeas petition.

### Factual Background[1]

This case involved two incidents that took place in the early hours of October 22, 2003.  The first incident, which led to counts seven and eight, occurred on Saffold Road in Wimauma, Florida.  Rita Sanchez testified that she heard footsteps outside of her trailer. When she looked out the window, she saw two men coming towards the door.  Sanchez yelled to her son, Jessie Garza, to wake up.  Sanchez stated that she went onto the porch and saw a man whose face was covered pointing a gun at her.  Garza grabbed her and brought her back inside.  As the men tried to force the door open, Garza held the door closed from inside.  Sanchez testified that, during the incident, she heard one of the men say "James" or "Johnson."  Garza also testified that he heard someone say "Johnson."

Sanchez tried to call 911 but the phone was dead.  Garza testified that he believed he heard someone leaving through the back gate.  Sanchez and Garza waited for about five minutes and then went to a neighbor's house to call 911.  Sanchez's call was received at approximately 12:40 a.m.[2]  A K-9 unit responded following Sanchez's 911 call, and the dog tracked to a wallet located at the intersection of Saffold Road and River Estates Drive.

---

[1] This factual summary is derived from the briefs filed on direct appeal and the evidence presented at trial.

[2] Testimony was presented that another call regarding a suspicious vehicle at the Saffold Road location had been received about twenty minutes earlier.

The wallet contained Bessette's driver's license and credit card.

The second incident, which led to counts one through six, occurred on Balm Riverview Road in Tampa, Florida. Juan Padilla, Maria Martinez, and Padilla's daughter Miriam Sierra were asleep in their trailer. Padilla woke up when he heard noise. He testified that he saw a small truck parked outside and heard banging on the front door. Padilla looked outside and saw a person saying "DEA" and directing him to open the door. Padilla told Martinez to call 911. Padilla testified that he heard a noise from the rear door, and two men carrying guns came inside. Padilla further testified that their faces were covered. One of the men directed Martinez, who had called 911, to hang up the phone. After Sierra came out of her room, one man held Sierra and Martinez at gunpoint while the other man attacked Padilla, hitting him in the head. Padilla testified his assailant took $1,200 from his pocket.

Deputy Charlotte Raschke and other officers arrived in response to Martinez's 911 call. Rashcke testified that when she entered the trailer, she saw Johnson standing over Martinez and Sierra with his gun pointed down at them. After Johnson followed Raschke's instruction to drop the gun, Raschke saw another gun and turned to find Bessette crouching down, pointing a gun at her. When Bessette did not comply with Raschke's instruction to drop the gun, Raschke testified, she fired her weapon. Bessette ran out of the trailer. Raschke, a K-9 unit officer, tracked Bessette with her dog and found him hiding in a swampy area behind the trailer. Along the track, she and other officers noticed cash on the ground. They recovered $1,200.

Bessette's recorded post-arrest statement to police was played at trial. Bessette also testified that he went to the Saffold Road property at approximately 10:30 to 11:00

p.m. to try to buy drugs.  Bessette stated that he was with Joe Johnson, but that he parked

his truck down the street and Johnson stayed in the truck.  Bessette testified that after he

knocked on the trailer door, he heard voices inside the trailer but no one opened the door.

Bessette testified that they left and drove to an acquaintance's residence before proceeding

to the Balm Riverview Road property.  There, he parked his truck in front of the trailer.

Bessette testified that he intended to buy drugs and had about $1,500.  He stated that after

a woman allowed Bessette and Johnson inside the trailer, they began to argue with Padilla

about money.  He stated that Padilla produced a firearm, and that they fought over it until

a short time before law enforcement's arrival.

## Standard Of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this

proceeding.  *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert.*

*denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody

"in violation of the Constitution or laws or treaties of the United States."   28 U.S.C.

§ 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court

review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this

deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case.  "The [AEDPA] modified a

federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693.  In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010).  *See also Cullen v. Pinholster,* _U.S._, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion, the state appellate court affirmed the rejection of Bessette's postconviction motion.  The state appellate court also denied Bessette's state habeas petition without comment.  These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court. *Pinholster,* 131 S. Ct. at 1398.  Bessette bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the

burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

## Exhaustion of State Remedies; Procedural Default

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion.   28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).  A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary."  *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the

State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004). The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 170 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice.

*Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96.   A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892.

## Discussion

Grounds One And Two: Trial Court Error

In Ground One, Bessette argues that the state trial court erred in denying his motion to sever the Balm Riverview Road charges from the Saffold Road charges.  In Ground Two, he asserts that the state trial court erred in limiting his cross-examination of a State witness.  He contends that these errors violated his rights to due process and a fair trial. These claims, as presented in his federal habeas petition, are vague and do not state federal constitutional violations.  Even liberally construing Bessette's *pro se* reply, which clarifies these grounds, as raising federal due process arguments and as referring to State witnesses Juan Padilla and Maria Martinez, any federal claims cannot provide relief because they are unexhausted.

Bessette raised his allegations of trial court error on direct appeal.  However, he did not present them as involving a federal issue.  Instead, Bessette's arguments were based on state law.  (Dkt. 19, Ex. 2.)  By failing to raise a federal constitutional question in his state court pleading, Bessette did not exhaust the claims.  *See Duncan*, 513 U.S. at 365-66; *Picard*, 404 U.S. at 275-76.

Bessette's assertion in his reply that he effectively presented the state court with the substance of a federal due process claim is unconvincing and unsupported by the record. A petitioner must make clear to the state court that he is raising a federal constitutional

claim.  "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."  *Zeigler v. Crosby*, 345 F.3d 1300, 1307 (11th Cir. 2003) (quoting *Duncan*, 513 U.S. 364).  Simply asserting the facts necessary to support a federal claim is insufficient.  "[T]o exhaust state remedies, petitioners must do more than present 'the state courts only with the facts necessary to state a claim for relief' and must additionally articulate the constitutional theory serving as the basis for relief."  *Id.* (quoting *Henry v. Dep't of Corr.*, 197 F.3d 1361, 1366 (11th Cir. 1999)).  "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made."  *Id.* (quoting *Anderson v. Harless*, 459 U.S. 4 (1982)).  The Eleventh Circuit Court of Appeals has addressed the analysis of whether a petitioner presented his argument in a manner sufficient to alert the state court to a federal claim:

> [T]he Supreme Court recently wrote that a petitioner wishing to raise a federal issue in state court can do so "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004).  If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement [:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" *McNair*, 315 F.Supp.2d at 1184 (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S.Ct. 617, 620, 88 L.Ed.2d 598 (1986)).  This is consistent with settled law established by the Supreme Court.  *See Picard*, 404 U.S. at 275, 92 S.Ct. at 512 ("We emphasize that the federal claim must be fairly presented to the state courts.").  We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'" *Kelley*, 377 F.3d at 1345 (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)).

*McNair v. Campbell*, 416 F.3d 1291, 1302-03 (11th Cir. 2005).

As Bessette did not raise the federal nature of his claims on direct appeal, he failed to exhaust any federal due process claims now presented.[3]   State procedural rules do not provide for a second direct appeal. *See* Fla. R. App. P. 9.140.   Accordingly, these claims are procedurally defaulted.  *See Smith*, 256 F.3d at 1138.   Bessette does not allege or demonstrate that either exception applies to overcome the default.  *See id.*   He is not entitled to relief on Ground One or Ground Two.

## **Grounds Three, Four, Five, and Six: Ineffective Assistance of Counsel**

### **Standard For Claims Of Ineffective Assistance Of Counsel**

Grounds Three through Six allege ineffective assistance of counsel, a difficult claim to sustain.  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.

---

[3] Bessette asserts in his reply that he alerted the state court to the federal nature of the claim raised in Ground Two by citing *Tomengo v. State*, 864 So.2d 525 (Fla. 5th DCA 2004), which cites federal law, in his initial brief on direct appeal.  Even assuming this citation was sufficient to assert a federal due process claim with regard to this argument, Bessette does not establish entitlement to relief.  Bessette wanted to cross-examine Padilla and Martinez about the source of the $1,200 to support his theory that no robbery occurred because the money belonged to Bessette.  Padilla, who testified that the money was taken from him, stated on cross-examination that he obtained the money by working and selling a car.  (Dkt. 20, Ex. 1, Vol. IV, pp. 141, 162.)  The court did not permit further questioning of Padilla or Martinez concerning the source of the money, finding it to be an irrelevant collateral matter.  (Id., pp. 162-63, 209-13.)

A violation of a defendant's right to impeach an adverse witness is stated "by showing that [the defendant] was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'"  *Olden v. Kentucky*, 488 U.S. 227, 231 (1988) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986)).   Bessette does not establish how further questions about the source of the money  would have impacted the credibility of Padilla and Martinez, or that he was entitled to engage in further cross-examination of either witness regarding an irrelevant collateral issue.  Thus, Bessette does not establish that the state appellate court's decision was contrary to or an unreasonable application of controlling Supreme Court precedent, or based on an unreasonable determination of the facts.

1994)).  Claims of ineffective assistance of counsel are analyzed under the test set forth

in *Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and
> well documented.  In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct.
> 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test
> for analyzing ineffective assistance of counsel claims.  According to
> *Strickland*, first, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the defendant by
> the Sixth Amendment.  Second, the defendant must show that the deficient
> performance prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable.  *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).  In order to show deficient

performance, a petitioner must demonstrate that "in light of all the circumstances, the

identified acts or omissions [of counsel] were outside the wide range of professionally

competent assistance."  *Strickland*, 466 U.S. at 690.  However, "counsel is strongly

presumed to have rendered adequate assistance and made all significant decisions in the

exercise of reasonable professional judgment." *Id.*  Additionally, "a court deciding an actual

ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on

the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Bessette must demonstrate that counsel's alleged error prejudiced the defense

because "[a]n error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the

judgment." *Id.* at 691-92.  To show prejudice, a petitioner must demonstrate "a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different.  A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.* at 694.

Counsel's strategic choices "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Pinholster*, 131 S. Ct. at 1410 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address

both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

Ground Four

Bessette asserts that counsel was ineffective for not calling potential witnesses Martha McGuire and Jeff Marriott, and for not introducing physical evidence about which he believes Marriott would have testified.  The state court granted an evidentiary hearing on this claim.[4]  Bessette drove a truck on the night of the offenses.  At the evidentiary hearing, Bessette testified that McGuire was a neighbor of the Saffold Road victims who would have testified that she saw a car at this location.  (Dkt. 20, Ex. 14, Vol. XIII, pp. 2280-82.)  He also testified that McGuire would have stated she saw individuals smaller than Bessette walking near her home at the time of the incident.  (Id., p. 2283.)  Bessette testified that counsel agreed McGuire would be a valuable defense witness.  (Id., p. 2330.)

Counsel testified at the evidentiary hearing that he deposed McGuire, but that her testimony was "filled with" hearsay, that she was confused about the events, and that calling her would cause him to lose any credibility he had established with the jury.  (Id., p. 2340.)  Counsel also stated that McGuire could have been impeached with her report to law enforcement, in which she reported seeing a truck.  (Id.)  The state court denied Bessette's claim:

> After reviewing the allegations, the testimony, evidence, and arguments presented at the February 22, 2011, evidentiary hearing, the court file, and

---

[4] Bessette's independent, substantive claims that counsel was ineffective for not calling McGuire and Marriott and not introducing evidence are considered here.  To the extent that Bessette's allegations concerning McGuire and Marriott are also raised in support of his distinct claim that counsel should have withdrawn due to illness, they are considered in Ground Five, *infra*.

the record, the Court finds [counsel's] testimony to be more credible than that of Defendant. Therefore, the Court finds [counsel] made a reasonable strategic decision not to call Ms. McGuire to testify at trial. **As such, no relief is warranted upon this portion of claim four**.

(Dkt. 20, Ex. 14, Vol. VIII, p. 1302) (emphasis in original)

The record supports the state court's finding that Bessette failed to establish ineffective assistance of counsel. Counsel described numerous reasons why he believed McGuire would not be a desirable witness. The state court's finding that counsel's testimony was credible is presumed correct. *Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the petitioner's].")*, cert. denied*, 526 U.S. 1047 (1999); *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d).")*, cert. denied*, 513 U.S. 1161 (1995).

Further, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one [a reviewing court] will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d at 1512. Counsel is presumed to have made all decisions in the reasonable performance of counsel's duties. *Strickland*, 466 U.S. at 690. Moreover, Bessette failed to call McGuire at the evidentiary hearing or present evidence establishing the trial testimony she would have given.[5] *See United States v. Ashimi*, 932 F.2d 643, 650

---

[5] Bessette appears to argue that postconviction counsel was ineffective for not calling McGuire and Marriott at the evidentiary hearing. In support, he relies on *Martinez v. Ryan*, _ U.S. _, 132 S.Ct. 1309 (2012). *Martinez* is inapplicable. *Martinez* holds that the procedural default of a claim of ineffective assistance of trial counsel can be overcome by establishing that postconviction counsel was ineffective for failing to raise the claim in collateral proceedings. 132 S.Ct. at 1320. No procedurally defaulted claim of ineffective assistance of trial counsel is at issue here. Further, *Martinez* does not establish a freestanding claim of ineffective

(7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted).

Consequently, Bessette's claim is too speculative to warrant relief.  *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful.  This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir.1985)).  *See also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).  Bessette does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying this portion of his claim.

Bessette also contends that Jeff Marriott could have testified favorably for the defense regarding the screen door on Padilla's trailer.  At trial, Padilla testified that the perpetrators "forced [the door], they opened it with a pair of pliers."  (Dkt. 20, Ex. 1, Vol. IV, p. 132.)  He testified that the screen on the door had been torn but was previously intact. (Id., pp. 153-54.)  Padilla also reviewed a photograph of a pair of pliers, and stated they were used to open the door but were not previously in his residence.  (Id., pp. 155-56.) Detective Frank Losat testified that the trailer's rear door did not appear to have a "forced entry," but that the screen appeared to have been cut.  (Dkt. 20, Ex. 1, Vol. VI, pp. 357-58.)

Apparently in support of the defense that Bessette was invited inside, counsel

---

assistance of postconviction counsel.  *See Lambrix v. Sec'y, Fla. Dept. of Corr.*, 756 F.3d 1246, 1262-63 (11th Cir. 2014).  Accordingly, to the extent Bessette attempts to make such a claim, he is not entitled to relief.

intended to show that the screen could not have been cut with this tool.   During trial,
counsel indicated he wanted to introduce a piece of screen he obtained, stating that it was
similar to the one that was cut.  (Id., pp. 446-47.)  Counsel said that, additionally, he was
"looking for the wire cutters also that he had to show that it would not cut those things."
(Id., p. 447.)  The court found that the piece of screen had no relevance, noting that the
State had not admitted wire cutters and "[n]obody knows if it was used."  (Id., p. 448.)
Therefore, the court refused to permit introduction of the screen obtained by counsel.

Bessette testified at the evidentiary hearing that he was familiar with Padilla's trailer
and knew the hole in the screen already existed.  (Dkt. 20, Ex. 14, Vol. XIII, p. 2284-85.)
He believed Marriott, an investigator hired by counsel, would have testified that the pliers
were incapable of cutting the metal on the screen.  (Id., p. 2285.)  Counsel testified at the
evidentiary hearing that he directed Marriott to buy a similar piece of screen with the idea
of demonstrating that the "wire snips" could not cut the screen.  (Id., p. 2341.)[6]   Counsel
testified to his recollection that there was no trial testimony indicating the screen was
actually cut with the instrument, and to the trial court's ruling that the screen was irrelevant.
(Id.) The state postconviction court reviewed the evidentiary hearing testimony and rejected
Bessette's claim of ineffective assistance:

> After reviewing the allegations, the testimony, evidence, and
> arguments presented at the February 22, 2011, evidentiary hearing, the court
> file, and the record, the Court finds Defendant failed to provide this Court with
> any admissible evidence to support his claim that Jeff Marriott would have
> testified that the screen was similar to the screen on his door and that they
> forced the rear door open with a pair of pliers.  Therefore, the Court finds
> Defendant failed to demonstrate prejudice. **As such, no relief is warranted**

---

[6] Testimony and discussion in the state court record refer to "pliers," " wire cutters," and "wire snips."
These terms appear to refer to the same instrument alleged to have been used to cut the screen door.

**upon this portion of claim four.**

(Dkt. 20, Ex. 14, Vol. VIII, p. 1306) (emphasis in original)

Given the trial court's refusal to allow introduction of the screen, Bessette does not show he was prejudiced when counsel did not seek to introduce the screen or call Marriott to testify about it.   Further, Bessette does not present any evidence of the testimony Marriott would have provided.   *See Ashimi*, 932 F.2d at 650.   His speculative assertion cannot sustain his ineffective assistance claim.   *See Johnson*, 256 F.3d at 1187; *Tejada*, 941 F.2d at 1559.   Bessette fails to show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting this aspect of his claim. Ground Four warrants no relief.

<u>Ground Five</u>

Counsel experienced health issues at the time of Bessette's trial.   As counsel acknowledged at the evidentiary hearing, he had medical treatment scheduled on Mondays, Wednesdays, and Fridays.   Counsel also had surgery before and after trial. While counsel testified at the evidentiary hearing that he did not recall whether he had surgery scheduled on Friday during the week of trial, it appears from the record that he did have surgery scheduled that day.

Bessette argues that counsel was ineffective for failing to withdraw from representation due to his medical concerns.   He makes it clear that "the issue is trial counsel's failure to withdraw from the case where his illness rendered him unable to represent Petitioner competently."   (Dkt. 26, p. 7.)   In support, Bessette asserts that portions of the record reflect counsel's problems with his hearing and eyesight and that counsel's decision not to call McGuire and Marriott was made partly because his

opportunity to do so would have been on Wednesday afternoon, when he had to depart for his scheduled medical appointment.

In his postconviction motion, Bessette alleged the same claim that counsel was ineffective for not withdrawing due to illness and presented supporting factual allegations. The state court granted an evidentiary hearing on his overall claim that counsel was ineffective for failing to withdraw. Bessette testified at the evidentiary hearing to his understanding of counsel's health history and his scheduled medical appointments. He testified to his belief that counsel did not call McGuire and Marriott because doing so would have required counsel to miss his scheduled appointment on Wednesday. (Dkt. 20, Ex. 14, Vol. XIII, pp. 2288-89.) However, Bessette conceded that he did not voice his concerns about counsel's health to the trial court. (Id., p. 2327-29.)

At the evidentiary hearing, counsel acknowledged his health issues, and stated that he had previously moved for a continuance of trial when he believed his health required it. (Id., pp. 2335-36.) But counsel testified that he believed he could provide competent representation at the time of trial. (Id., p. 2336.) He testified that if he experienced any sort of health issue during the trial, he would have brought it to the court's attention. (Id., p. 2337.) The postconviction court concluded:

> After reviewing the allegations, the testimony, evidence, and arguments presented at the February 22, 2011, evidentiary hearing, the court file, and the record, the Court finds [counsel's] testimony to be more credible than that of Defendant. Therefore, the Court finds despite [counsel's] medical issues, [counsel] provided competent representation of Defendant during the trial. Consequently, the Court finds Defendant cannot demonstrate that [counsel] acted deficiently in failing to withdraw from the case as Defendant was not prejudiced by [counsel's] illnesses. **As such, no relief is warranted upon this portion of claim six.**

(Dkt. 20, Ex. 14, Vol. VIII, p. 1321) (court's record citation omitted) (emphasis in original)

Bessette does not demonstrate that this decision was an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts.   The state court's credibility determination must be given deference.   *See Baldwin v. Johnson*, 152 F.3d at 1316; *Devier v. Zant*, 3 F.3d at 1456.   Additionally, Bessette provides no evidence that counsel did not call McGuire and Marriott because of his medical appointment.   And given the state court's findings regarding counsel's decisions not to call McGuire and Marriott addressed in Ground Four, *supra*, Bessette fails to show that the circumstances surrounding counsel's decision not to call these potential witnesses indicate that counsel should have withdrawn.

The state court also rejected Bessette's supporting arguments that counsel's alleged inability to adequately hear or see demonstrated that he should have withdrawn.   In support of his assertion regarding counsel's hearing, Bessette states that the following occurred simply because counsel could not hear what was being said.   First, Bessette claims that counsel did not object to Raschke's testimony that at Balm Riverview Road, she noticed a gold pickup truck outside of Padilla's trailer and knew of an alert indicating that such a vehicle was possibly involved in another home invasion.   Bessette states that this testimony was improper because he was not charged with another home invasion and no evidence was presented of the police alert.[7]

Second, Bessette claims that counsel failed to object to the State's introduction of evidence, including a screwdriver recovered near the Balm Riverview Road property that

---

[7] Bessette's truck was described as tan or brown.

was irrelevant and prejudicial.  Third, he asserts that counsel did not object when the prosecutor stated in closing arguments that the whole night was about robberies, and that the jury could consider the Balm Riverview Road events to determine Bessette's intentions at Saffold Road.  Fourth, he asserts that counsel incorrectly stated in closing arguments that Miriam Sierra did not recall much.  Bessette claims her testimony about the location of Padilla and Martinez within the trailer during the incident contradicted their testimony. Finally, Bessette claims that counsel frequently asked speakers to repeat themselves.

Bessette testified to these matters at the evidentiary hearing.  (Dkt. 20, Ex. 14, Vol. XIII, pp. 2302, 2313-2322.)[8] He further testified that counsel did not hear Sierra's testimony that the gun was chrome in color and suggested that this conflicted with other trial testimony about the color of the gun.  (Id., p. 2315.)  Counsel testified that he probably had difficulty hearing women's voices that were low, but that if he did not hear someone, he would ask the person to speak up.  (Id., p. 2347.)  He stated he had no other hearing failure that prevented him from being able to listen to witnesses.  (Id., p. 2351.)  He testified that he would have informed the court if he could not hear.  (Id., pp. 2351-52.)  With regard to the State's introduction of physical evidence, counsel testified that Bessette frequently distracted him during trial by trying to talk to him, but that he and co-counsel did approach the bench to object.  (Id., pp. 2350-51.)

Co-counsel also testified that counsel could hear.  (Id., p. 2367.)  Co-counsel testified that, although he informed the court at the bench that counsel did not hear the

---

[8] The evidentiary hearing testimony refers to a bench conference where counsel and co-counsel objected after the State introduced numerous pieces of physical evidence, including the screwdriver, and indicated they did not hear some of the evidence being introduced.  As a result of their objections, the trial court required the State to withdraw the screwdriver from evidence.  (Dkt. 20, Ex. 1, Vol. VI, pp. 321-35.)

introduction of some evidence, it would have been more accurate to say that counsel could

hear but was distracted by Bessette.   (Id., p. 2369.)

The state court found that counsel was capable of hearing during trial:

> After reviewing the allegations, the testimony, evidence, and arguments presented at the February 22, 2011, evidentiary hearing, the court file, and the record, the Court finds [counsel's] and [co-counsel's] testimony to be more credible than that of Defendant.  Therefore, the Court finds based on [counsel's] and [co-counsel's] testimony, [counsel] could hear, but at times, was unable to hear because Defendant was distracting him by talking to him. The Court finds Defendant failed to demonstrate that [counsel] failed to object to the alleged evidence because he did not hear Deputy Raschke's testimony.  **As such, no relief is warranted upon this portion of claim six.**

(Dkt. 20, Ex. 14, Vol. VIII, p. 1326) (emphasis in original)

Bessette does not establish that counsel experienced such difficulty hearing that he

was ineffective for not withdrawing.[9]  The court's factual finding that counsel could hear is

afforded deference, and Bessette does not overcome the presumption of correctness

attached to this finding.  28 U.S.C. § 2254(e)(1). The court's credibility determination also

must be afforded deference.  *See Baldwin v. Johnson*, 152 F.3d at 1316; *Devier v. Zant*,

3 F.3d at 1456.  Even if the specific instances of counsel's conduct raised in support of

Bessette's overall claim could be taken as separate claims of ineffective assistance of

counsel, Bessette fails to establish prejudice.[10]   Thus, Bessette does not show that the

_____

[9] In his Notice of Supplemental Authority (Dkt. 28), Bessette cites *United States v. Roy*, 761 F.3d 1285 (11th Cir. 2014), which held that Roy was deprived of his Sixth Amendment right to counsel when counsel was physically absent from a critical stage of Roy's trial.  Bessette claims that although his counsel "was physically present, his inability to hear rendered him unable to lodge objection's [sic] during critical stages of trial." (Dkt. 28, p. 1.)  *Roy* affords no relief.  Not only is it distinguishable from Bessette's case, but the Eleventh Circuit granted rehearing en banc and vacated this opinion in *United States v. Roy*, 580 Fed. App'x 715 (11th Cir. 2014).

[10] First, with regard to Raschke's testimony, while Bessette correctly points out that counsel objected when two other police witnesses began to comment on the police alert (Dkt. 20, Ex. 1, Vol. V, p. 275; Vol. VI, p. 300), he fails to establish a reasonable probability that the outcome of trial would have been different had counsel objected to Raschke's isolated reference to the police alert given the evidence of his guilt presented

state court's denial of his claim was an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts.

Finally, in further support of his argument that counsel was ineffective for not withdrawing, Bessette asserts that counsel had difficulties seeing during trial and was thus unable to locate documentation with which to impeach State witnesses Juan Padilla and Detective Maney Lowe. Bessette claims that counsel "failed to locate the photographs or the portion of testimony in the deposition transcripts needed to impeach Mr. Padilla." (Dkt. 26, p. 17.) He cites to pages of the trial transcript reflecting that Padilla testified his assailant had a black gun. During cross-examination, counsel indicated that he believed Padilla may have given a different answer during deposition but stated that he would find it later. (Dkt. 20, Ex. 1, Vol. IV, pp. 170-71.) At the postconviction evidentiary hearing, Bessette also explained that photographs would have contradicted Padilla's testimony that he bled on the floor after being attacked and that a porch light had been broken. (Dkt. 20, Ex. 14, Vol. XIII, pp. 2303-07.)

Lowe testified at trial about Bessette's post-arrest statement. Bessette cites to a page of the trial transcript containing Lowe's testimony that the beginning of Bessette's statement was not recorded but was repeated after recording began. Counsel did not inquire further about this matter. (Dkt. 20, Ex. 1, Vol. VI, p. 380.) Bessette testified at the

---

at trial. Second, the State withdrew the screwdriver from evidence after counsel and co-counsel approached the bench and objected. Third, the court instructed the jury that each crime and the evidence applicable to it must be considered separately. (Dkt. 20, Ex. 1, Vol. VII, p. 605.) Fourth, Bessette does not show that any discrepancies concerning the victims' precise location within the trailer or the color of the assailant's gun that may have been discerned from Sierra's testimony would have supported his defense, called into doubt the credibility of Padilla and Martinez, or diminished the weight of the other evidence of his guilt such that there is a reasonable probability the trial's outcome would have been different. Fifth, Bessette's vague claim that counsel asked speakers to repeat themselves is insufficient to show prejudice.

evidentiary hearing that Lowe provided contradictory testimony in his deposition and indicated Lowe could have been impeached had counsel been able to see the deposition transcript. (Dkt. 20, Ex. 14, Vol. XIII, pp. 2307-08.)

Bessette also testified to his understanding of counsel's ability to see, and to his belief that counsel had eye surgery shortly before trial. (Id., p. 2302.) Counsel testified that he could not recall having any issues with his eyesight during trial, and that he was able to see and read documents. (Id., p. 2352.) Co-counsel also testified that counsel was able to read. (Id., p. 2368.)   The state court rejected this aspect of Bessette's claim:

> After reviewing the allegations, the testimony, evidence, and arguments presented at the February 22, 2011 evidentiary hearing, the court file, and the record, the Court finds based on [counsel's] and [co-counsel's] testimony, [counsel] could see. The Court further finds if [counsel] could not find certain testimony contained within a deposition transcript, it was not because he could not see. The Court further finds that although [counsel] may have had problems finding the photographs while Mr. Padilla was on the stand, the photographs were ultimately admitted into evidence. Consequently, the Court finds Defendant cannot demonstrate deficient conduct nor prejudice. **As such, no relief is warranted upon this portion of claim six.**

(Dkt. 20, Ex. 14, Vol. VIII, pp. 1328-29) (emphasis in original)

The state court's factual findings that counsel could see and that any failure to find the relevant documentation was not due to problems with his eyesight warrant deference. Bessette does not establish, by clear and convincing evidence, that these findings were incorrect. 28 U.S.C. § 2254(e)(1). Even assuming that the instances cited as factual support for Bessette's claim could be construed as separate claims of ineffective

assistance, he fails to show prejudice.[11]   Bessette does not show that the state court's rejection of his claim was an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts.

In sum, the state court denied Bessette's claim that counsel was ineffective for not withdrawing due to illness, and rejected his arguments that concerns about counsel's medical schedule, hearing, and eyesight supported his overall position that counsel should have withdrawn.   Bessette does not establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in reaching this decision.   Accordingly, Ground Five provides no relief.

Ground Three

Bessette alleges that counsel was ineffective with regard to a jury deadlock.   The jury deliberated on February 23, 2006, which the record indicates was a Thursday.   During deliberations, the jury sent a note to the trial court that read, "At this time we have come to a decision on counts one, seven, and eight.   However, we cannot agree on count [sic] two through five.   What are our options?"  (Dkt. 20, Ex. 1, Vol. VII, p. 624.)   Without objection from either party, the court provided the jury with the standard deadlock instruction, referred

---

[11] Bessette acknowledged at the evidentiary hearing that the photographs at issue were later introduced into evidence at trial.  (Dkt. 20, Ex. 14, Vol. XIII, pp. 2304-05.)  He further conceded that counsel addressed the issue in his closing argument.  (Id.)  Bessette does not show prejudice as a result of counsel's failure to impeach Padilla with allegedly contradictory deposition testimony.  Bessette simply does not show that raising any inconsistency about the color of the gun would have undermined Padilla's credibility or outweighed the other evidence of Bessette's guilt such that there would have been a reasonable probability of a different result at trial.

Nor does Bessette show prejudice regarding counsel's cross-examination of Lowe.  Attached to Bessette's postconviction motion is what he asserts is one page of Lowe's deposition transcript.  It appears to show that, when asked if he recalled any conversation during the non-taped portion of the interview regarding an injury Bessette sustained, Lowe stated he did not remember.  (Dkt. 20, Ex. 14, Vol. I, p. 98.)  Bessette does not establish that raising this matter would have affected Lowe's credibility or diminished the weight of the evidence of guilt so as to result in a reasonable probability that the outcome of trial would have been different.

to as an *Allen* instruction.[12]  The court stated:

> I know that you have all worked hard to try to reach a verdict in this case.  It apparently has been impossible for you so far with regard to at least those other counts, two through five.   Sometimes an early vote before discussion can make it hard to reach an agreement about the case later. The vote, not the discussion, might make it hard to see all sides of the case.
>
> We are all aware that it is legally permissible for a jury to disagree.
>
> There are two things a jury can lawfully do - - agree on the verdict or disagree on what the facts of the case may truly be.
>
> There is nothing to disagree about on the law.  The law is as I told you.  If you have disagreements about the law, I should clear them up for you now.  That should be my problem and not yours.
>
> If you disagree over what you believe the evidence showed, then only you can resolve that conflict if it is to be resolved.
>
> I have only one request of you.  By law I cannot demand this of you, but I want you to go back into the jury room, taking turns tell each of the other jurors about any weakness of your own position.
>
> You should not interrupt each other or comment on each other's views until each of you has had a chance to talk.
>
> After you have done that, if you simply cannot reach a verdict as to those counts, that is counts two through five, then you should return to the courtroom, and I will declare the case mistried as to those charges only and I will accept your verdicts on the other counts.
>
> You will then be discharged with my sincere appreciation for your services.
>
> I ask that you now retire to continue with your deliberations.

(Id., pp. 626-27.)  *See* Fla. Std. Jury Inst. (Crim.) 4.1.  The jury resumed deliberations and returned their verdict later on Thursday, February 23.

Bessette argues that the jury incorrectly believed they were required to reach a verdict that day.  He contends that the jury should have been sent home when they could not reach a verdict on the remaining counts by Thursday evening.  Bessette states that the court informed the parties it would typically send the jury home, but was not going to do so

---

[12] *See Allen v. United States*, 164 U.S. 492 (1896).  An *Allen* charge "instructs a deadlocked jury to undertake further efforts to reach a verdict."  *United States v. Chigbo*, 38 F.3d 543, 544 n.1 (11th Cir. 1994).

in this case to accommodate counsel's medical schedule.[13]

Bessette argues that counsel should have objected to the *Allen* instruction or asked the court to adhere to its normal procedures.  He contends that counsel did not do so because he had a personal interest in the jury reaching a verdict on Thursday due to his scheduled surgery the next day.  Bessette contends that counsel's conduct contributed to the jury engaging in "marathon deliberation[s] under [the] misconception they must reach a verdict that day."  (Dkt. 1, p. 10.)  Bessette also points to a portion of counsel's closing argument in which he stated:

> Remember, there is no tomorrow.  What you do today is final.  This is a very serious, very solemn responsibility that you have.  You control the destiny of Mr. Bessette in your hands.  Today it's over with.  You cannot come back tomorrow and say, well, you know, maybe that's what happened. No.  If you have a maybe that's what happened, that's reasonable doubt.

(Dkt. 20, Ex. 1, Vol. VII, p. 562.)  Bessette raised these arguments in claim three of his postconviction motion, on which the state court conducted an evidentiary hearing.

At the hearing, Bessette testified that the jury began to deliberate at approximately 10:15 a.m.  (Dkt. 20, Ex. 14, Vol. XIII, p. 2269.)  He recalled that the jury informed the court

---

[13] After the testimony of Deputy Jennifer Marie Smith was read back in response to a question from the jury, a recess was taken.  The court then stated:

> Okay.  This is what I'm going to do.  Usually, I would, frankly, send them home at this point and bring them back tomorrow.  I'm not going to do that. [Counsel] has surgery scheduled tomorrow.  I'm going to keep them.
> If it becomes appropriate, I'm going to feed them dinner and let them keep deliberating.
> Unless they come out and say, we can't do this, we are too tired, then we will have to consider something else.
> Beyond that, I'm going to let them keep going.  Nobody's indicated - - I mean, they had lunch several hours ago, obviously.

(Dkt. 20, Ex. 1, Vol. VII, p. 623.)  The trial transcript does not reflect the precise time the court made these statements, although it was prior to the court providing the *Allen* instruction.

that they could not reach a decision around 6:30 p.m. but ultimately reached a verdict at 10:17 p.m.  (Id., p. 2269.)  Bessette testified to his belief that counsel's illness and scheduled surgery prompted the reading of the *Allen* instruction and the jury's "marathon" deliberations on Thursday.  (Id., p. 2269-75.)

Counsel testified that he did not believe he had a legal objection to raise to the *Allen* charge.  (Id., pp. 2337-38.)  He also testified that he believed the jury had likely already reached a not guilty verdict on counts seven and eight, concerning Saffold Road, because Bessette was not identified by witnesses in connection with that incident.  (Id., p. 2338.)  Therefore, counsel had no opposition to the jury continuing to deliberate because he believed they might acquit Bessette on all counts.  (Id., p. 2361.)

With regard to his schedule and medical needs, counsel testified that if the jury returned Friday for further deliberations, he could have "made arrangements" or co-counsel could have handled the proceedings.  (Ex. 14, Vol. XIII, p. 2239.)  Counsel stated that he did not need the trial to conclude on Thursday.  (Ex. 14, Vol. XIII, p. 2359-60.)  Counsel further testified that, during closing argument, he was only stating that the jury had one opportunity to decide the case and they must be positive and unanimous in their verdict. (Id., pp. 2353-54.)  Counsel told the court his remark was not a reference to the time frame of deliberations, and that he had made that statement to many juries.  (Id., p. 2353.)

Following the evidentiary hearing, the postconviction court denied this claim.  It reviewed the evidentiary hearing testimony of Bessette and counsel and found as follows:

> After reviewing the allegations, the testimony, evidence, and arguments presented at the February 22, 2011, evidentiary hearing, the court file, and the record, the Court finds [counsel's] testimony to be more credible than that of Defendant.  Therefore, the Court finds [counsel] did not have any legal basis to object to the deadlock instruction.  The Court further finds [counsel's]

comments during closing arguments were referring to the finality of their decision, not that they had to come to a decision that day.  The Court also finds [counsel] did not make said comments because the deliberations had to be summed up that day due to his impending surgery. . . . Consequently, the Court finds Defendant cannot demonstrate either deficient conduct or prejudice.  **As such, no relief is warranted upon this portion of claim three.**

(Dkt. 20, Ex. 14, Vol. VIII, p. 1297) (court's record citations omitted) (emphasis in original)

The record supports this finding.[14] Bessette does not establish grounds for an objection to the standard *Allen* instruction. Providing an *Allen* instruction may lead to reversal if the charge is inherently coercive.  *United States v. Dickerson*, 248 F.3d 1036, 1050 (11th Cir. 2001).  The *Allen* instruction given to Bessette's jury states that it is permissible for the jury to disagree on the facts, and that if the jury could not reach a verdict after further deliberations, they should inform the court of that status.

Furthermore, in light of counsel's evidentiary hearing testimony, Bessette also fails to show that counsel had a personal motive for failing to object to the instruction or that his remark during closing arguments referred to the timing or duration of deliberations. Counsel's testimony reflects that he had no reason to try to halt deliberations because he believed the jury might acquit Bessette of all counts. The state court's determination that counsel's testimony was credible must be given deference. *See Baldwin v. Johnson*, 152 F.3d at 1316; *Devier v. Zant*, 3 F.3d at 1456.  Bessette does not show that, under these circumstances, counsel was ineffective for not objecting to the instruction or attempting to conclude deliberations for the day.

_____

[14] Bessette asserts that the state court misconstrued his claim as one that counsel was ineffective for failing to object to the substance of the *Allen* instruction, rather than the length of deliberations.  The record does not support this assertion.  Additionally, the state court is presumed to rule on the merits of the claim presented to it.  *See Richter*, 562 U.S. at 99.  Bessette does not demonstrate entitlement to relief on his claim of ineffective assistance of counsel.

Additionally, Bessette's argument that counsel's conduct resulted in the jury believing they were required to reach a verdict on Thursday cannot warrant federal habeas relief because it is speculative.  *See Tejada*, 941 F.2d at 1559.  Bessette presents no evidence that the jury thought they were required to reach a decision Thursday.  Nor does he establish that the jury reached their verdict for any reason other than their belief that the State met its burden of proof with regard to the crimes of which Bessette was convicted. Accordingly, Bessette does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim.  Ground Three warrants no relief.

<u>Ground Six</u>

The charging document reflects that Bessette and co-defendant Joe Johnson were both charged with counts one through five, but only Bessette was charged with counts six, seven, and eight.  (Ex. 1, Vol. I, pp. 120-24.)  Count six alleged aggravated battery of Juan Padilla during the Balm Riverview Road incident; count seven alleged attempted armed burglary of a dwelling with regard to Rita Sanchez and/or Jessie Garza at the Saffold Road incident; and count eight charged aggravated assault of Sanchez. (*Id.*) The trial court provided Florida's standard jury instruction on principals:

> Principal is defined as follows: If the defendant helped another person or persons commit a crime, the defendant is a principal and must be treated as if he had done all the other things the other person or persons did if the defendant had a conscious intent that the criminal act be done and the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the other person or persons to actually commit the crime.
> To be a principal, the defendant does not have to be present when the crime is committed.

(Ex. 1, Vol. I, p. 150; Ex. 1, Vol. VII, p. 599.)   *See* Fla. Std. Jury Inst. (Crim.) 3.5(a);

§ 777.011, Fla. Stat.   Bessette asserts that appellate counsel was ineffective for not arguing that the principals instruction was improper with regard to counts six, seven, and eight because Johnson was not charged with those counts.

Bessette raised this claim in his state habeas corpus petition alleging ineffective assistance of appellate counsel.  The state appellate court rejected this argument when it denied Bessette's petition without comment. Claims that appellate counsel provided ineffective assistance are analyzed under the two-part test set forth in *Strickland*.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991).  To establish a claim, Bessette must show that appellate counsel's performance was objectively unreasonable, and that there is a reasonable probability that, but for this performance, Bessette would have prevailed on his appeal.  *Robbins*, 528 U.S. at 285-86.

As a preliminary matter, this claim of trial court error was not preserved for appellate review because no contemporaneous objection was made.  *See Jackson v. State*, 983 So.2d 562, 567-68 (Fla. 2008).  Bessette appears to argue that the claim could have been raised absent preservation, however, because it constituted fundamental error.  *See id.* at 568.  A fundamental error is one "which goes to the foundation of the case or goes to the merits of the cause of action."  *Id.* (quoting *Hopkins v. State*, 632 So.2d 1372, 1374 (Fla. 1994)).  However, he does not show entitlement to relief.[15]

Under Florida law, "a person who is charged in an indictment or information with

---

[15] Bessette also states that his motion for new trial, which the court orally denied, alleged error in providing the principals instruction.  (Dkt. 20, Ex. 1, Vol. II, pp. 210-11; Vol. III, p. 339.)  Even assuming that Bessette's claim concerning the principals instruction therefore could have been raised on appeal by alleging that the trial court erred in denying the motion for new trial, Bessette is not entitled to relief on his claim of ineffective assistance of appellate counsel because he does not meet his burden under *Strickland*.

commission of a crime may be convicted on proof that she aided or abetted in the commission of such crime." *State v. Larzelere*, 979 So.2d 195, 215 (Fla. 2008) (citing *State v. Roby*, 246 So.2d 566, 571 (Fla. 1971)).   Accordingly, "if an information charges a defendant with a substantive crime, . . . and the proof establishes only that he was feloniously present, aiding, and abetting in the commission of the crime, a verdict of guilty as charged should be sustained."  *Watkins v. State*, 826 So.2d 471, 474 (Fla. 1st DCA 2002) (citing *Roby*, 246 So.2d at 571, and *Jacobs v. State*, 184 So.2d 711, 715 (Fla. 1st DCA 1966)).   The principals instruction may, therefore, be given if "the evidence at trial supports such an instruction."  *McGriff v. State*, 12 So.3d 894, 895 (Fla. 1st DCA 2009) (citations omitted).

On federal habeas review, alleged error in jury instructions is reviewed for the denial of fundamental fairness and due process. *See Henderson v. Kibbe*, 431 U.S. 145, 156–57 (1977).  The challenged instruction must not be viewed in isolation; the habeas court should consider the context of the instructions as a whole as well as the entire trial record. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).   Thus, "federal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, 'so infected the entire trial that the resulting conviction violate[d] due process.'"  *Jamerson v. Sec'y for Dep't of Corr.*, 410 F.3d 682, 688 (11th Cir. 2005) (quoting *McGuire*, 502 U.S. at 72.)

The evidence adduced at trial reflects that two suspects were working in concert with regard to both the Saffold Road and Balm Riverview Road offenses.  Evidence placed Bessette at or near the scene of both offenses.  Accordingly, Bessette does not establish that the state trial court erred in giving the principals instruction, which was a correct

statement of Florida law.

Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit." *Unitea States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting *Alvora v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)). Furthermore, appellate counsel is not required to raise every non-frivolous issue on appeal. *Heath*, 941 F.2d at 1130-31. Rather, "effective advocates 'winnow out' weaker arguments" even when such arguments may have merit. *Id.* at 1131. Appellate counsel may choose to focus on the strongest claims while excluding claims that might have a lower chance of success or detract from stronger arguments. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). Thus, Bessette does not show that appellate counsel was ineffective for not bringing this claim.

Accordingly, Bessette does not show that the state appellate court's rejection of his ineffective assistance of appellate counsel claim was contrary to or an unreasonable application of controlling Supreme Court precedent, or was based on an unreasonable determination of the facts. Consequently, Ground Six warrants no relief.

Any of Petitioner's claims not specifically addressed herein have been determined to be without merit.

Accordingly, it is **ORDERED AND ADJUDGED** that Bessette's petition for writ of habeas corpus (Dkt. 1) is **DENIED**. The Clerk is instructed to enter judgment against Bessette and close this case.

It is further **ORDERED** that Bessette is not entitled to a certificate of appealability. A petitioner does not have absolute entitlement to appeal a district court's denial of his

habeas petition.  28 U.S.C. § 2253(c)(1).  A district court must first issue a certificate of appealability (COA).  *Id.*  "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, Bessette "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Bessette has not made this showing.  Finally, because Bessette is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

**ORDERED** in Tampa, Florida, on September 29, 2015.

Charlene Edwards Honeywell
United States District Judge

Copy to:

Allie Charles Bessette

Counsel of Record